**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

THOMAS SMITH,                                                                           PLAINTIFF
ADC #55114

V.                                          5:13CV00244-KGB-JJV

ARKANSAS DEPARTMENT OF
CORRECTION; *et al.*                                                            DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Kristine

G. Baker.  Any party may serve and file written objections to this recommendation.  Objections should

be specific and should include the factual or legal basis for the objection.  If the objection is to a factual

finding, specifically identify that finding and the evidence that supports your objection.  An original

and one copy of your objections must be received in the office of the United States District Court Clerk

no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be

furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to

appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or

additional evidence, and to have a hearing for this purpose before either the District Judge or

Magistrate Judge, you must, at the time you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence to be proffered at the new hearing (if such a hearing is granted)

was not offered at the hearing before the Magistrate Judge.

3.      The details of any testimony desired to be introduced at the new hearing in the form

of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence

desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing.  Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## DISPOSITION

### I.   INTRODUCTION/FACTS

Plaintiff Thomas Smith is a former state inmate who filed this action pursuant to 42 U.S.C. § 1983 against Defendants, alleging failure to protect in violation of his Fifth, Eighth, and Fourteenth Amendment rights, and the Arkansas Civil Rights Act, Arkansas Code Annotated § 16-123-101 *et seq.*[1]

Pending before the Court are the Defendants' Motion and Amended Motion for Summary Judgment (Doc. Nos. 45, 48), to which Plaintiff has responded (Doc. Nos. 53, 57).

### II.   SUMMARY JUDGMENT[2]

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See Dulany v. Carnahan,* 132 F.3d 1234, 1237 (8th Cir. 1997).  "The

---

[1]Plaintiff Smith is no longer listed as an inmate on the ADC website.

[2]Plaintiff asks the Court to defer ruling on the Summary Judgment Motions until a dispute over three additional videotapes has been resolved.  (Doc. No. 53 at 2.)  By Order dated August 25, 2014, this Court denied Plaintiff's Motion to Compel Discovery, based on Defendants' assertions that the only known video tape on the date of the incident was provided to Plaintiff.  (Doc. No. 55). In Plaintiff's Response to the Summary Judgment Motions, he does not indicate what additional facts may be gleaned from any additional videotapes, or how such would affect the Court's decision on the Motions.  After careful consideration of this request, the Court denies Plaintiff's request to withhold ruling on Defendants's Motion for Summary Judgment.

moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Webb v. Lawrence County,* 144 F.3d 1131, 1134 (8th Cir. 1998) (citations omitted). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials of allegations in the pleadings; rather, the non-movant must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 1135 (citations omitted). Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Id.*

### A.    UNDISPUTED FACTS

According to the mostly undisputed facts, on February 9, 2013, Plaintiff was housed in the M3 barracks of the Cummins Unit, and was classified as a 1B inmate - also known as a "trusty." (Doc. Nos. 47 at 1; 52 at 1.) "Trusties," as the name implies, are afforded greater privileges and work assignments and do not require the same level of supervision as maximum security inmates. (Doc. Nos. 47 at 1; 52 at 2.)

On this day, inmate Daniel Kelly was performing his job duties as a barber in the barracks. Kelly refused to shave inmate Stokes because he did not have a proper shave script. (Doc. Nos. 47 at 1-2; 52 at 2.) As a result, Stokes attacked and beat Kelly. (Doc. Nos. 47 at 2; 52 at 3.) The attack came as a surprise because the two never previously had any conflicts and were not identified as enemies on any alert lists. (*Id.*)

Officers responded and Defendant Mizell found Kelly on the ground bleeding. Presumably Officer Mizell was the first one on the scene as he witnessed Stokes hit Kelly. (Doc. Nos. 47 at 2, 6; 52 at 4, 11.) Mizell ordered Stokes to stop and he obeyed. Stokes and all other inmates also obeyed

orders to return to their bunks.  (Doc. Nos. 47 at 6; 52 at 11,12.)

Officers Avery, Burnett, and Tolbert also arrived on scene, where Tolbert and Burnett rendered aid to Kelly and removed him from the barracks for transport to the infirmary.  (Doc. Nos. 47 at 2, 4; 52 at 7-8.)  During transport, Avery questioned Kelly about what happened and learned Stokes had been the attacker. (Doc. Nos. 47 at 3; 52 at 5.) Tolbert accompanied Kelly to the infirmary while Burnett returned to her post in the barracks.  (Doc. Nos. 47 at 4-5; 52 at 8-10.)  When Officer Burnett returned to her post in the barracks after a disputed period of time, she found Stokes carrying his belongings (in anticipation of being punished) and stating, "I'm done with it, Ms. Burnett."   (Doc. Nos. 47 at 5; 52 at 10.)  Avery then arrived back at the barracks and confronted Stokes who admitted attacking Kelly.  (Doc. No. 47 at 3; 52 at 5.) Officers then cuffed and removed Stokes from the barracks. *Id*.

Shortly thereafter, an inmate made Officer Burnett aware that Mr. Smith was injured.  Burnett found him on his bunk with his right facial area swollen and bleeding.  (Doc. Nos. 47 at 5-6; 52 at 11.) Burnett called for assistance and notified her supervisor.  (Doc. Nos. 47 at 6; 52 at 11.)  Avery, who was with Stokes, responded to the call and learned Stokes had also attacked Smith. (Doc. No. 47 at 3.)  Avery went back to Stokes who admitted to also attacking Smith.   (Doc. Nos. 47 at 4; 52 at 6.) Stokes claimed to Avery that Smith called him a racist and disrespectful name that Smith denies.  (*Id.*)

### B.    OFFICIAL CAPACITY LIABILITY

Pursuant to Defendants' argument, Plaintiff does not oppose the dismissal of the Arkansas Department of Correction or the official capacity claims against the individual Defendants, based on sovereign immunity.

### C.      QUALIFIED IMMUNITY/FAILURE TO PROTECT[3]

Defendants ask the Court to dismiss Plaintiff's allegations against them based on the doctrine of qualified immunity.  They argue that dismissal is appropriate because, without dispute, both of inmate Stokes's attacks were a surprise and therefore their actions were objectively reasonable.

Qualified immunity protects officials who act in an objectively reasonable manner and shields a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is a question of law, not a question of fact. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005).  Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).[4]  Defendants are entitled to qualified immunity only if no reasonable fact finder could answer

---

[3]Plaintiff alleges in his Amended Complaint that Defendants violated his Fifth, Eighth, and Fourteenth Amendment rights.  (Doc. No. 34, p. 3.) However, the parties do not address the Fifth and Fourteenth Amendment allegations; the Court also is unclear how Plaintiff's allegations state claims for relief under these Amendments.  Therefore, the Court will limit its analysis to Plaintiff's Eighth Amendment claims.

[4]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the

both questions in the affirmative.  *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009).

To support a failure to protect claim, Plaintiff must prove that Defendants were aware of a substantial risk of harm to him, and their failure to properly protect him from harm was a result of deliberate indifference to his health and safety.  *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003).  Furthermore, in order to establish a reckless disregard by Defendants, Plaintiff must show he was faced with a "pervasive risk of harm" and that Defendants failed to response reasonably to that risk.  *Falls v. Nesbitt*, 966 F.2d 375, 378 (8th Cir. 1992).

Defendants cite to Plaintiff's deposition testimony that, prior to the attack, he and Stokes lived together peacefully and even watched football together. (Doc. No. 45-8 at 4-7.)  In addition, even after Stokes attacked Kelly, he did not feel threatened or in danger by Stokes.  (*Id.* at 12.)  Therefore, Defendants did not disregard a known risk and were not deliberately indifferent to Plaintiff's need for safety.  Defendants argue that rather than a constitutional violation, Plaintiff's allegations sound in negligence, which does not rise to the level of deliberate indifference.  *See Stephens v. Johnson*, 83 F.3d 198, 200-201 (8th Cir. 1996).  They note that all Defendants immediately arrived on the scene of the first attack, and because  Defendants Tolbert and Burnett were aiding Kelly, they were not even in the barracks when Stokes attacked Smith.  Defendant Mizell immediately regained control of the barracks when he ordered inmates to return to their beds, and Defendant Avery immediately began investigating the attack by questioning Kelly and then Stokes.  It was not until he questioned Stokes that Avery became aware of the second attack on Smith.

While he agrees that Defendants had no prior knowledge of any risk of harm by Stokes, Plaintiff argues that Defendants are liable for failing to immediately restrain and cuff him, resulting

---

particular case at hand." *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. at 236).

in the opportunity to attack.  Even though it was a surprise attack, Smith claims, it would not have

occurred if Defendants had followed ADC procedures and their job duties and restrained Stokes.

Plaintiff also relies on the deposition testimony of inmate Edward Jackson, who, before the second

attack on Smith, heard Stokes yell to officers to cuff him because he was "fixing to go on one"

(meaning attack another person).  (Doc. No. 52-1 at 15.)  Hence, Defendants were on notice that

Stokes presented a danger to Mr. Smith, and they failed to protect him.

### D.     ANALYSIS

#### 1.     Defendants Tolbert and Burnett

Plaintiff admits that Defendant Tolbert accompanied inmate Kelly from the barracks to the

infirmary, and was not present in the barracks when Stokes attacked Plaintiff.  (Doc. No. 56 at 3, 8-9.)

He also admits Defendant Burnett accompanied Kelly to the transport area, and when she returned to

the barracks, encountered Stokes and immediately notified Defendant Avery.  (*Id.* at 9-11.)  Although

Plaintiff claims that Defendants violated his rights by leaving the scene prior to restraining Stokes and

preventing the subsequent attack, he provides no evidence that Defendants Tolbert and Burnett were

aware of the harm and that they acted with deliberate indifference or reckless disregard to his health

or safety.  Therefore, the Court finds Defendants Tolbert and Burnett are entitled to qualified immunity

from liability.

#### 2.     Defendant Avery

Officer Avery stated in his deposition that inmate Stokes had never posed any problems prior

to the day of the incident.   (Doc. No. 45-2 at 4-5.)  Avery states when he arrived on scene he saw

Kelly bleeding and lying on the floor.  *Id.*  Avery admitted that he was trained to immediately remove

an attacker from the area of the incident, but denied hearing Officer Mizell identify Stokes as the

assailant.  (*Id.* at 9.)  He also admitted that he did not ask any of the other guards if they had seen the

attack.  (*Id.* at 10.)  Instead, he was trying to learn from Kelly who had assaulted him.  Although Kelly

initially was unresponsive to Avery's questioning, during transport Kelly later identified Stokes.  (*Id.* at 5.)  Armed with this information, Avery returned to the barracks to question Stokes and, at that time, he also became aware of the subsequent attack on Smith.  (*Id.* at 6-7.)

Given these facts, the Court finds Defendant Avery also is entitled to qualified immunity from liability.  At most, Plaintiff's allegations against Avery - that he failed to immediately detain and restrain Stokes - arise to the level of negligence and not a constitutional claim of deliberate indifference.  "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008).  It is significant that the uncontroverted facts show Stokes had not posed harm to Smith or others in the past, and Mr. Smith admits he did not feel threatened by Stokes even after the attack on Kelly. (Doc. No. 45-8, pp. 20-21.)  And inmate Jackson's testimony about Stokes's warning that he would attack again, is not persuasive.  Jackson admits that Stokes went out of the barracks, into the hall, and that he could not see which officers were present, or who witnessed Stokes's outburst.  Therefore, there is no evidence that Avery or any of the other Defendants heard this outburst from Stokes.  In light of such, Plaintiff provides no evidence that Avery's actions in accompanying Kelly to the transport area and not immediately restraining Stokes, amounted to deliberate indifference or reckless disregard for his health and safety.  Lastly, Plaintiff's allegations that Defendants' actions violated ADC policies and procedures fail to state a constitutional claim.  *See Williams v. Nix*, 1 F.3d 712, 717 (8th Cir. 1993), where the court held, "the mere violation of a state law or rule does not constitute a federal due process violation."

### 3.    Defendant Mizell

Officer Mizell's actions give the Court the most concern.  He was apparently the first to arrive at the barracks and actually witnessed Stokes beating Kelly. (Doc. No. 45-7.)   But Mizell took no action to detain Stokes to prevent further harm.  Nevertheless, Stokes obeyed Officer Mizell's order

to step aside and all inmates, including Stokes, obeyed orders to move to their bunks. (*Id.*) Mizell was was not aware that Stokes subsequently struck Smith as he had secured the door of the barracks and stepped outside. (*Id.* at 6.) Again, Plaintiff admits that after the first attack, Stokes did not pose a risk of harm to anyone else, and walked to his bed and started packing his property. (Doc. No. 48-8 at 21.) Plaintiff also admits Defendant Mizell would not deliberately try to cause him harm, but that he failed to do his job by not immediately restraining inmate Stokes. (*Id.* at 24.) And inmate Jackson's testimony about a possible second attack, even if true, does not identify Defendant Mizell as failing to act.

Taking all the facts as true, the Court finds that Plaintiff fails to prove that he was faced with a "pervasive risk of harm" when Mizell failed to immediately restrain Stokes. *See Falls v. Nesbitt,* 966 F.2d at 378. So Mizell is immune from suit pursuant to the doctrine of qualified immunity.[5]

### E.   ARKANSAS CIVIL RIGHTS ACT

Defendants ask the Court to dismiss this claim, citing the statute's provision that "when construing this section, a court may look for guidance to state and federal decisions interpreting the federal Civil Rights Act of 1871, as amended and codified in 42 U.S.C. § 1983, . . . ,which decisions and act shall have persuasive authority only." Ark. Code Ann. 16-123-105(c). In *Hess v. Ables,* the Eighth Circuit upheld the dismissal of the state civil rights claim after the parties "failed to present arguments about whether the protection afforded by the ACRA is broader or narrower than that

---

[5]This Court also finds persuasive the decision in *Tucker v. Evans*, 276 F.3d 999 (8th Cir. 2002), where an inmate was beaten to death by several other inmates after the correctional officer turned out the lights to the barracks one evening. *Id.* at 1000. The inmate's estate alleged the officer failed to properly perform inspection duties, incorrectly interpreted an argument between the decedent and one of his attackers, and failed to supervise the barracks. *Id.* at 1000-1001. The Eighth Circuit reversed the district court's denial of qualified immunity, finding, even if the allegations were true, the conduct was at most gross negligence and "insufficient to prove a violation of Tucker's constitutional rights." *Id.* at 1002. A defendant is entitled to qualified immunity "unless a reasonable official would have known that [his] actions constituted a deliberate, callous, or reckless disregard to [inmate] safety." *Id.* at 1001.

afforded by § 1983 . . . "  714 F.3d 1048, 1054 (2013).  Similarly, in this case, while Defendants ask

for dismissal of the state civil rights claim based on dismissal of the federal claims, Plaintiff does not

specifically address this issue.  Therefore, the Court finds that Plaintiff's state law claim should be

dismissed without prejudice.[6]

## IV   CONCLUSION

IT IS, THEREFORE ORDERED THAT:

1.     Defendants' Motion and Amended Motion for Summary Judgment (Doc. Nos. 45, 48)

be GRANTED.

2.     Plaintiff's Eighth Amendment claims against Defendants be DISMISSED with

prejudice.

3.     Plaintiff's Fifth and Fourteenth Amendment claims against Defendants be DISMISSED

without prejudice for failure to state a claim upon which relief may be granted.

4.     Plaintiff's state law claim be DISMISSED without prejudice.

DATED this 17th day of September, 2014.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE

---

[6]28 U.S.C. § 1367(c)(3) grants a district court discretion to reject supplemental jurisdiction over state law claims if the court dismissed all claims over which it has original jurisdiction.  *See Gregoire v. Class*, 236 F.3d 413, 419-20 (8th Cir. 2000), and *ACLU v. City of Florissant*, 186 F.3d 1095-1098-99 (8Cir. 1999), where the court stated, "when state and federal claims are joined and all federal claims are dismissed on a motion for summary judgment, the state claims are ordinarily dismissed without prejudice to avoid needless decisions of state law ... as a matter of comity." (Internal quotations omitted.)